IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE: FISKER AUTOMOTIVE HOLDINGS, ) Civ. No. 13-2100-SLR
INC. SHAREHOLDER LITIGATION )

**MEMORANDUM ORDER**

At Wilmington this 15th day of November, 2016, having reviewed the papers submitted in connection with the pending discovery motions, and having heard argument on the same;

IT IS ORDERED that plaintiffs' motion to compel (D.I. 122) and the United States Department of Energy's motion to quash and for a protective order (D.I. 147) are both granted in part and denied in part, as described more fully below:

1. **Standard of review.** "The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Redland Soccer Club, Inc. v. Department of Army*, 55 F.3d 827, 853 (3d Cir. 1995) (citation omitted). The privilege is intended to encourage "the frank exchange of ideas and opinions" within an agency, in order to promote the "quality of administrative decisions." *Id.* at 854. "The deliberative process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable." *Id.* "The party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or nature of the case . . . or by making a *prima facie* showing of misconduct.'" *Id.* (citation

omitted).

2. The Third Circuit has explained that a district court must first "decide whether the communications are in fact privileged," and then "must balance the parties' interests" in light of "at least the following factors: '(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.'" *Id.*

3. **Factual background.** In late 2008, Fisker Automotive applied for financial assistance under the United States Department of Energy's ("DOE") ATVM program to produce luxury hybrid electric cars. On September 18, 2009, DOE issued a $528.7 million Conditional Commitment Letter which allocated $169.3 million for Fisker Automotive to complete its first vehicle, the Fisker Karma, and $359 million to complete a low cost plug-in hybrid tentatively called the Fisker Nina ("ATVM Loan"). Included in the ATVM Loan were confidential "milestones" that Fisker Automotive was required to meet or be in default. One milestone was to commence commercial production of its flagship Fisker Karma by February 2011.

4. In March 2011, Fisker Automotive officials made a confidential presentation to DOE in which they said that the company had met the Karma production milestone. In June 2011, however, DOE discovered that Fisker Automotive had in fact not met that milestone. DOE immediately cut off Fisker Automotive from further draws on the ATVM Loan. Notwithstanding the above decision, neither DOE nor Fisker Automotive told anyone about this freeze or the basis for it. Indeed, on October 20, 2011, DOE issued

a press release regarding the status of the Fisker Automotive ATVM program:

> Two years ago, critics said we shouldn't be investing in American auto manufacturing because the industry wouldn't survive. They were wrong then and they're wrong today. From well-established names like Ford to innovative startups like Tesla and Fisker, America's auto industry is being reinvented, and the Department's loan program is helping play an important role. . . .
>
> With the help of a $529 million loan, Fisker is producing high performance vehicles with an advanced hybrid electric powertrain that could significantly improve performance and fuel economy. . . . Fisker's production schedule was delayed by regulatory issues that were outside of its control, but the company has successfully raised more than $650 million in private sector investment to support its ongoing operations since closing its DOE loan. . . . .

(D.I. 24 ¶ 70)

5. **Analysis.** Given the kind of documents at issue, I started this exercise with an understanding that the DOE had appropriately asserted the deliberative process privilege. I opted, however, to "perform a preliminary *in camera* review of the documents in question before balancing the competing interests and exercising [my] discretion," consistent with the Third Circuit's suggestion in *Redland Soccer Club, Inc.*, 55 F.3d at 855. In so doing, I have identified several documents with severable facts (albeit as described by DOE personnel).[1] More significantly, I have also identified documents that relate to the facts misrepresented in DOE's October 2011 press release.[2] I conclude that the latter group of documents are relevant and not likely to be

---

[1] Documents at tabs 12 (pages 127-131); 19 (pages 0519-0521, 0536-0540); 20 (pages 0718-0721, 0735-0739, 0761-0764); 70 ("Prod. 04 - 004028); 71 (page 4 of update briefing)

[2] Documents at tabs 11 (pages 8-9); 55; 59; 62 (sections captioned "Key Considerations" and "Detailed Recommendations"); 81 ("Prod 04-005284-87); 95; 111; 113; 146; 151; 155; 160 (pages 7, 9); 164; 165; 166; 167; 172 (bottom of page 3).

available from another source, and that the role of the government in this serious litigation was pivotal. I understand that such disclosures may have a negative impact on future DOE analyses, but conclude nonetheless that under the circumstances at bar - the public money at stake, the Congressional hearings, and the fact that Fisker Automotive is now a defunct company - the balance of interests favors plaintiffs.

6. The documents identified in footnotes 1 and 2 shall be produced on or before **November 22, 2016.** They shall remain under seal and for attorneys' eyes only until further order of the court (unless the parties to this dispute agree otherwise).

_____
United States District Judge