IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE FISKER AUTOMOTIVE HOLDINGS, )   Civ. No. 13-2100-SLR
INC. SHAREHOLDER LITIGATION                )

**MEMORANDUM**

At Wilmington this 7th day of February, 2017, having reviewed defendants' motions to dismiss (D.I. 158; D.I. 160), plaintiffs' motion to strike certain references (D.I. 183), and the responses thereto; the court issues its decision based on the following reasoning:

1. By an order dated June 30, 2014, the court consolidated three securities fraud lawsuits filed against defendants Henrik Fisker ("Fisker"), Bernhard Koehler, Joe DaMour, Peter McDonnell ("McDonnell"), Kleiner Perkins Caufield & Byers LLC, Ray Lane, Keith Daubenspeck, Richard Li Tzar Kai ("Li"), and Ace Strength, Ltd. ("Ace Strength"), (collectively "defendants").[1] (D.I. 23)  On October 15, 2015, the court granted in part and denied in part defendants' motions to dismiss plaintiffs' amended consolidated complaint.[2] Specifically, the court granted the motions as to the claim for

---

[1] The present action was filed on December 27, 2013; *CK Investments LLC v. Fisker*, Civ. No. 14-118, was filed on January 31, 2014; and *PEAK6 Opportunities Fund L.L.C. v. Fisker*, Civ. No. 14-119, was filed on January 31, 2014. All citations are to the present action, Civ. No. 13-2100.

[2] Plaintiffs are: Atlas Allocation Fund, L.P. and Atlas Capital Management, L.P., CK Investments LLC, David W. Raisbeck, Hunse Investments, L.P., Southwell Partners, L.P., Sandor Master Capital Fund, John S. Lemak, Pinnacle Family Office Investments, L.P., Dane Andreeff, SAML Partners, Kenneth & Kimberly Roebbelen Revocable Trust of 2001, Brian Smith, PEAK6 Opportunities Fund L.L.C., 8888 Investments GmbH, MCP Fisker L.L.C., 12BF Global Investments, Ltd., and ASC Fisker L.L.C. (D.I. 145 at ¶¶ 9-25)  Non-parties are Fisker Automotive and Middlebury Group LLC, Middlebury

violations of the Securities Act of 1933 (the "Securities Act"), and denied the motions with respect to the claim for violations of the Securities Exchange Act of 1934 (the "Exchange Act").[3] (D.I. 81, 82)  On May 16, 2016, the court granted plaintiffs' unopposed motion for leave to file a second amended complaint ("SAC") adding a claim of common law fraud. (D.I. 144)  The SAC was filed the same day.[4] (D.I. 145)

2. **Judicial notice.** As an initial matter, plaintiffs oppose defendants' request for judicial notice as to the two "schedule of exceptions" documents,[5] as neither is cited or referred to in the SAC. (D.I. 183)  The SAC cites to "all of the offering materials including Prospectuses/Private Placement Memoranda and other offering documents made available to purchasers of Fisker Automotive Securities." (D.I. 145 at ¶ 129)  There is no real dispute that these two schedule of exceptions documents are part of the offering documents, and plaintiffs do not contest their authenticity. Indeed, plaintiffs

---

Ventures II/III, LLC, and/or Ridgemakers SPV II/III, LLC. (*Id.* at ¶¶ 26, 36)  All parties are more fully defined in the court's previous memorandum opinion. (D.I. 81)

[3] The court also granted McDonnell's motion to dismiss, and stayed Ace Strength and Li's motion to dismiss pending the completion of jurisdictional discovery. (D.I. 81, 82)  Ace Strength and Li's motion to dismiss was later denied without prejudice to renew. (D.I. 108)

[4] The court has jurisdiction pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiffs' common law claim pursuant to 28 U.S.C. § 1367.

[5] The Schedule of Exceptions to Amended and Restated Series D-1 Preferred Stock Purchase Agreement dated December 16, 2011 ("the December 16, 2011 Schedule of Exceptions") and the Amended and Restated Schedule of Exceptions to Amended and Restated Series D-1 Preferred Stock Purchase Agreement dated December 21, 2011 ("the December 21, 2011 Schedule of Exceptions").

2

requested and received judicial notice of a similar "schedule of exceptions" document,[6] "because [it] is included in the offering materials cited in the Complaint." (D.I. 54 at 2, 81 at 46 n.40) The court concludes that the documents (including the two in dispute) are referenced in the complaint. (D.I. 162, 163) Accordingly, the court takes judicial notice of such documents as needed for the present motions. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 2006) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Plaintiffs' motion to strike the references to such documents is denied. (D.I. 183)

3. **Standard of Review.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are

---

[6] Schedule of Exceptions to Fisker Holdings, Inc. ("Holdings") Series C-1 Preferred Stock Purchase Agreement dated April ___, 2011, as amended (the "Purchase Agreement").

3

not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

4. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

5. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a

4

court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

6. **Analysis.**[7] To prevail on a claim of common law fraud, plaintiffs are

> required to show that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.

*DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005); *see also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).[8]

7. On December 8, 2011, Fisker Automotive's Board of Directors unanimously approved a 40% "pay to play" capital call imposed on all Fisker Automotive investors (the "December 2011 Capital Call"). On December 15, 2011, Fisker Automotive made

---

[7] A full recitation of the facts is provided in the court's revised memorandum opinion on the first motions to dismiss. (D.I. 81) The court briefly recounts certain relevant facts herein.

[8] Although a claim for common law fraud is not subject to the heightened pleading standards of the PSLRA, it still must be pled with particularity per Federal Rule of Civil Procedure 9(b). *See generally Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 431-32 (D. Del. 2006). Moreover, common law fraud claims are quite similar to claims for violations of § 10(b) of the Exchange Act. *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 560 n.11 (D. Del. 2010); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 54 (D. Del. 2002).

available to plaintiffs and other investors offering documents associated with the December 2011 Capital Call. (D.I. 145 at ¶ 79) Plaintiffs allege that, on the same day, during a conference call with investors, Fisker responded to a question concerning battery fires by stating that it 'is not a risk for us, we have a different chemistry[, a] liquid cooled battery.'" (Id. at ¶ 88) Fisker Automotive's December 21, 2011 Schedule of Exceptions disclosed the recall "of the approximate 50 vehicles that may be affected by this issue." (D.I. 162, ex. F at 28) On December 21, 2011, the National Highway Traffic Safety Commission acknowledged (through a "non-public letter" to Fisker Automotive) a safety recall campaign "of 239 Fisker Karmas due [to] a battery problem that could cause a fire." (D.I. 145 at ¶ 90) On December 29, 2011, the day after the first deadline to invest in the December 2011 Capital Call, Fisker Automotive publicly announced its recall of 239 Fisker Karmas due to the battery fire issue. (Id. at ¶ 91) On December 30, 2011, an article[9] reported that "Fisker spokesman Roger Ormisher said customers were alerted of the faulty batteries last week . . . ." (Id. at ¶ 92) (D.I. 34, ex. A)

8. The ATVM Loan[10] contained a "Key Personnel" covenant requiring Fisker to be "responsible for the management of the borrower." Plaintiffs allege that Fisker Automotive failed to disclose (in connection with the March 2012 Capital Call and September 2012 Capital Call offerings) that Fisker's resignation as CEO and from the

---

[9] Jonathan Starkey, Fisker issues Karma recalls, The News Journal (Wilmington, Delaware), December 30, 2011.

[10] Fisker Automotive applied for a loan from the U.S. Department of Energy ("DOE") under the DOE's Advanced Technology Vehicles Manufacturing Loan Program ("the ATVM loan"). On September 18, 2009, the DOE issued a $528.7 million Conditional Commitment Letter and allocated $169.3 million for Fisker Automotive to complete its first vehicle, and $359 million to complete a low cost plug-in hybrid. (D.I. 145 at ¶¶ 31, 44-47)

day-to-day management of Fisker Automotive in February 2012 caused Fisker Automotive to be in default of the Key Personnel covenant. (D.I. 145 at ¶¶ 100, 154) In certain of the offering documents, Fisker Automotive disclosed that if it "were to lose the services of Henrik Fisker . . . [it] would be in default under the DOE Loan Facility." (D.I. 162, ex. B at 24; see also D.I. 162, ex. G at 39; D.I. 163, ex. H at 54)

9. The ATVM Loan also required Fisker Automotive to complete several "milestones" to avoid default, including raising additional outside capital by certain dates and beginning commercial production of the Karma vehicle by February 2011 ("February 2011 Karma production milestone"). (D.I. 145 at ¶¶ 47-51) Plaintiffs allege that in March 2011, Fisker Automotive made a non-public presentation to DOE officials, representing that it met the February 2011 Karma production milestone for the ATVM Loan, when in fact it had not. (Id. at ¶ 53) In certain of the offering documents, Fisker Automotive disclosed that, "[b]ased on its current business plan, [Fisker Automotive] believes that it may not meet certain Project Milestones and, therefore, intends to seek appropriate waivers and/or modifications from the DOE." (D.I. 162, ex. A at 8, 34, 43-44, ex. B at 9, 14; D.I. 163, ex. C at 22-23, 29)

10. Plaintiffs allege that, on November 30, 2011, Fisker Automotive confidentially informed the DOE that a modest investment increase of $37 million at mid-month had nudged its available cash up to a still-thin $20 million. Fisker Automotive, however, failed to disclose its precarious cash position during the December 2011 Capital Call, i.e., that Fisker Automotive had $200 million in payables as of no later than November 30, 2011, of which $120 million were overdue, and that it had only $20 million in cash on hand and could be out of money as early as December 15, 2011. (D.I. 145 at ¶¶ 76, 93,

153) The December 16, 2011 Schedule of Exceptions stated that Fisker Automotive's "accounts payable ha[d] increased to approximately $172 million" and it had "cash on hand of approximately $54,431,000." (D.I. 162, ex. E at 26; see also D.I. 163, ex. C at 3, 29, 32, 56; D.I. 163, ex. D at 38)

11. For each of the misstatements/omissions, defendants seek to have the court weigh the facts and conclude that plaintiffs, through the various offering documents, "were warned about and were made aware of – repeatedly and extensively – the very risks and facts that they claim were concealed and misrepresented." (D.I. 159 at 8) Defendants are using the wrong procedural tool. At the motion to dismiss stage, the focus is on plaintiffs' allegations. Although defendants' additional facts[11] may change the landscape, viewing the facts in the light most favorable to plaintiffs, defendants made conflicting statements regarding Fisker Automotive's position on the disputed issues at various points in time. Plaintiffs have articulated facts sufficient to survive a motion to dismiss.[12]

12. **Personal Jurisdiction.** The court previously granted plaintiffs jurisdictional discovery to determine whether Li (alleged to be a member of the Board of Directors at all relevant times) and Ace Strength had the requisite contacts with the United States for the court to exercise personal jurisdiction. (D.I. 81 at 44-50) In the SAC, plaintiffs allege that Li was "a member of Fisker Automotive's Board of Directors at all relevant

---

[11] Developed "after one-and-a-half years of litigation and months of intense document discovery." (D.I. 189 at 3)

[12] In the same way that plaintiffs' allegations sufficed to state claims for violations of § 10(b) of the Exchange Act. (D.I. 81)

8

times until his resignation . . . effective July 15, 2011 and thereafter continued to attend and/or participate in various Fisker Automotive Board of Director meetings at all other relevant times." (D.I. 145 at ¶ 33) Plaintiffs also allege that they have determined from discovery materials that Li traveled to the United States for Fisker Automotive's Board meetings in 2010, 2011, and 2013. (D.I. 180 at 7 & n.8) Plaintiffs also identify outstanding jurisdictional discovery requests. (D.I. 180) Li and Ace Strength conclude (by citation to the court's reliance on Li's position as director) that the SAC "no longer raises even a colorable showing of personal jurisdiction," therefore, "jurisdictional discovery is no longer warranted." (D.I. 161 at 5-6; D.I. 192 at 1 & n.1) Li and Ace Strength do not dispute that there remain outstanding discovery requests. At no point were Li and Ace Strength relieved from their obligation to comply with the court's order. It is unclear (without the discovery) how involved Li remained (either individually or through Ace Strength). The motion to dismiss is denied. Li and Ace Strength are ordered to respond to plaintiffs' jurisdictional discovery requests and to participate in general discovery until relieved of their obligation to do so by the court.

13. **Conclusion.** For the foregoing reasons, defendants' motions to dismiss (D.I. 158; D.I. 160) and plaintiffs' motion to strike certain references (D.I. 183) are denied. An order shall issue.

*[signature]*
Senior United States District Judge