**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| IN RE FISKER AUTOMOTIVE HOLDINGS, )<br>INC. SHAREHOLDER LITIGATION )<br><br> ) | C.A. No. 13-2100-DBS-SRF<br><br>UNDER SEAL<br>unsealed 8/20/18 |

**MEMORANDUM ORDER**

At Wilmington this **9th** day of **August, 2018**, the court having considered the

submissions presented by the parties regarding the emergency motion to maintain defendants'

choice of counsel filed by defendants Kleiner Perkins Caufield & Byers LLC ("Kleiner") and

Ray Lane (together with Kleiner, "defendants") (D.I. 490),[1] IT IS HEREBY ORDERED that

defendants' motion is GRANTED, for the reasons set forth below:

**1. Procedural history.** On December 27, 2013, plaintiff Atlas Capital Management,

L.P. ("Atlas") filed suit against Henrik Fisker, Bernhard Koehler, Joe DaMour, Peter McDonnell,

Kleiner, Ray Lane, Keith Daubenspeck, Richard Li Tzar Kai, and Ace Strength, Ltd. for alleged

violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of

1934 (the "Exchange Act"), as well as common-law fraud in connection with the sale of Fisker

Automotive ("Fisker") securities.[2] (D.I. 1) The instant litigation followed the filing of Fisker's

---

[1] Other filings associated with the pending motion are found at D.I. 491, D.I. 492, D.I. 493, D.I.
494, D.I. 495, D.I. 498, D.I. 499, D.I. 500, D.I. 501, D.I. 503, D.I. 504, D.I. 508, D.I. 509, D.I.
510, D.I. 511, and D.I. 512.

[2] The initial complaint was filed by Atlas. (D.I. 1) In the amended complaint and second
amended complaint, Atlas was joined by Atlas Allocation Fund, L.P., CK Investments LLC,
David W. Raisbeck, Hunse Investments, L.P., Southwell Partners, L.P., Sandor Master Capital
Fund, John S. Lemak, Pinnacle Family Office Investments, L.P., Dane Andreeff, SAML
Partners, Kenneth & Kimberly Roebbelen Revocable Trust of 2001, Brian Smith, PEAK 6
Opportunities Fund L.L.C., 888 Investments GmbH, MCP Fisker L.L.C., 12BF Global
Investments, Ltd., and ASC Fisker L.L.C. (collectively, "plaintiffs"). (D.I. 24; D.I. 145)

chapter 11 bankruptcy petition on November 22, 2013 in the United States Bankruptcy Court for the District of Delaware. (D.I. 145 at ¶ 26)

**2.** On August 18, 2017, the court entered an order granting plaintiffs' motion to stay and vacating the operative scheduling order. (D.I. 434) The stay was lifted by order of the court on February 14, 2018 for the limited purpose of allowing certain depositions to proceed. (D.I. 466) Pending before the court is a motion to lift the stay "to allow Plaintiffs to resume discovery in full," or, alternatively, to allow discovery to proceed directed to two key witnesses. (D.I. 488)

**3. Background.** Michael D. Celio, an attorney at the law firm of Keker Van Nest & Peters LLP ("Keker Van Nest") from 2001 to July 2, 2018, has represented Kleiner and Mr. Lane as the lead attorney since the inception of the instant litigation in 2013. (D.I. 492 at ¶¶ 1-2) Mr. Celio has also represented Kleiner since 2011 in other matters relating to securities litigation, contractual litigation, regulatory matters, third-party subpoenas, and confidential pre-litigation matters. (*Id.* at ¶ 3)

**4.** On June 15, 2016, Atlas and Gibson Dunn & Crutcher LLP ("Gibson Dunn") executed an engagement letter, which included a prospective waiver of conflicts of interest. (D.I. 493 at ¶ 2) Pursuant to the waiver, Atlas agreed that Gibson Dunn could represent any "existing or new" client in any litigation or other matter adverse to Atlas's interests, so long as the matter was not substantially related to Gibson Dunn's representation of Atlas. (*Id.*; D.I. 500, Ex. B at 2) The engagement letter further provides that California law governs the agreement, stating that "[t]his agreement shall be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of California." (D.I. 500, Ex. B at ¶ 21)

**5.** On July 3, 2018, Mr. Celio joined the firm of Gibson Dunn & Crutcher LLP ("Gibson Dunn") as a partner in the firm's Palo Alto, California office. (D.I. 492 at ¶ 1) Atlas is an

2

existing client of Gibson Dunn for transactional and advisory matters, and objects to Mr. Celio's continued representation of Kleiner and Mr. Lane. (*Id.* at ¶ 6)

6. In response to Atlas's objection, Mr. Celio voluntarily agreed not to participate in this matter pending resolution of the instant dispute. (D.I. 492 at ¶¶ 6, 11) On July 3, 2018, counsel filed a notice requesting the removal of Mr. Celio as co-counsel. (D.I. 497) In accordance with the notice, Mr. Celio's representation was terminated on July 5, 2018.

7. **Analysis.**[3] The court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984); *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, C.A. No. 10-1067-LPS, 2011 WL 2692968, at *5 (D. Del. June 22, 2011). In accordance with the District of Delaware Local Rules, this court has adopted the Model Rules of Professional Conduct of the American Bar Association (the "Model Rules").[4] D. Del. LR 83.6(d).

---

[3] The pending motion is ripe for resolution at this time. Although Atlas challenged the ripeness of the pending motion in its brief, (D.I. 498 at 4), Atlas affirmatively confirmed that it intends to seek disqualification of Mr. Celio during oral argument on the pending motion, (7/30/18 Tr. at 16:24-17:3).

[4] The California Rules of Professional Conduct are inapplicable to the present matter. "[T]he rules of the jurisdiction in which the tribunal sits" apply to "conduct in connection with a matter pending before [the] tribunal . . . unless the rules of the tribunal provide otherwise." Model Rule 8.5(b)(1). This provision is intended to "provid[e] that any particular conduct of a lawyer shall be subject to only one set of rules of professional conduct." Model Rule 8.5, cmt. 3. The purpose of Model Rule 8.5(b) is to "minimiz[e] conflicts between rules, as well as uncertainty about which rules are applicable," to serve "the best interest of both clients and the profession." Model Rule 8.5, cmt. 3. This policy is specifically targeted to the circumstances presently before the court, in which an attorney is "admitted to practice before a particular court with rules that differ from those of the jurisdiction or jurisdictions in which the lawyer is licensed to practice." *Id.*, cmt. 2. "[T]he plain language of Rule 8.5 and its explanatory comment clearly state that if

3

**8.** Model Rule 1.7 provides that "a lawyer shall not represent a client if the

representation involves a concurrent conflict of interest," which arises when "(1) the

representation of one client will be directly adverse to another client; or (2) there is a significant

risk that the representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client, a former client or a third person or by a personal interest of the

lawyer." Model Rule 1.7(a). The parties do not dispute that Mr. Celio's representation of

defendants in the present litigation, and Gibson Dunn's representation of Atlas in other matters,

presents a concurrent conflict of interest.

**9.** Where, as here, a concurrent conflict exists, the lawyer may represent the client if four

criteria are met:

> (1) the lawyer reasonably believes that the lawyer will be able to provide
> competent and diligent representation to each affected client; (2) the
> representation is not prohibited by law; (3) the representation does not involve the
> assertion of a claim by one client against another client represented by the lawyer
> in the same litigation or other proceeding before a tribunal; and (4) each affected
> client gives informed consent, confirmed in writing.

Model Rule 1.7(b). In the present case, defendants contend that Atlas waived its right to claim a

conflict of interest by executing the prospective waiver contained in its engagement letter with

Gibson Dunn. (D.I. 491 at 7) The parties' dispute centers on whether the prospective waiver

executed by Atlas was based on informed consent.

**10.** Prospective conflict waivers are not *per se* invalid under the Model Rules. "The

ABA has affirmed the validity of prospective waivers." *Elonex I.P. Holdings, Ltd. v. Apple*

---

the lawyer's conduct relates to a proceeding pending before a tribunal, the lawyer is 'subject only
to the disciplinary rules of the jurisdiction in which the tribunal sits.'" *Alzheimer's Institute of
Am., Inc. v. Avid Radiopharms.*, 2011 WL 6088625, at \*3 (E.D. Pa. Dec. 7, 2011) (quoting
Model Rule 8.5, cmt. 2) (holding that Pennsylvania's rules of professional conduct applied, and
not California rules, to a California-barred attorney's request to withdraw)).

Computer, Inc., 142 F. Supp. 2d 579, 582-83 (D. Del. 2001) (citing *ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op.* 372 (1993)). Comment 22 to Model Rule 1.7 provides that a lawyer may seek a waiver of future conflicts if the four requirements of Model Rule 1.7(b) are met. Model Rule 1.7 cmt. 22; *see also Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 396 (N.D. Tex. 2013) ("The Comments to Rule 1.7, governing current client conflicts, recognize that a lawyer may properly request a client to waive future conflicts, subject to the test in Rule 1.7(b).").

**11.** The court concludes that the prospective conflict waiver in the Gibson Dunn engagement letter executed by Atlas was based on informed consent,[5] and is therefore valid and enforceable. *See* Model Rule 1.7(b)(4). "The language of the agreement is a primary source for determining whether or not a particular client's consent is informed." *Galderma*, 927 F. Supp. 2d at 399 (citing *Celgene Corp. v. KV Pharm. Co.*, 2008 WL 2937415, at *8 (D.N.J. July 29, 2008)). In pertinent part, the prospective waiver executed by Atlas provides that:

> [Gibson Dunn] can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings . . . ("Other Matters"), so long as the Other Matters are not substantially related to our work for you on the Tax Planning Matter, even if those other clients' interests are adverse to you in the Other Matters . . . and
>
> [Atlas] waive[s] any conflict of interest that might arise from the Firm's engagement in the Other Matters . . . and will not seek to disqualify the Firm or any of the Firm's lawyers in, or assert a conflict with respect to, the Firm's engagement in the Other Matters . . . .

(D.I. 500, Ex. B at 2-3)

---

[5] Although the party seeking disqualification bears the ultimate burden of proof on a motion to disqualify, the burden shifts to the attorney seeking permission to pursue an otherwise impermissible dual representation in the context of the informed consent analysis. *See Galderma Labs., L.P. v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 398 (N.D. Tex. 2013). Consequently, defendants bear the burden to show that Atlas gave informed consent.

**12.** Similar to the prospective waiver language before the court in *Galderma*, this language identifies a course of conduct for the parties. *See Galderma*, 927 F. Supp. 2d at 399. Specifically, Gibson Dunn may represent other clients whose interests conflict with Atlas, so long as those adverse interests are not substantially related to Gibson Dunn's representation of Atlas. In accordance with the 2002 amendments to the Model Rules, a lawyer is no longer required to name a potential party and the nature of a future matter with specificity. *Id.* at 400. The lack of detail regarding a specific future client and/or matter does not render the prospective waiver unenforceable in this instance because the waiver language "provides a framework for determining in the future, when a conflict arises, whether or not [Gibson Dunn] will be disqualified." *Id.* at 399-400.

**13.** Moreover, the waiver language agreed to by Atlas adequately explains the material risk to Atlas of waiving future conflicts of interest. In this regard, Gibson Dunn informed Atlas that, as a condition of its representation, it "can continue to represent, or can in the future represent, existing or new clients in any matter . . . even if those other clients' interests are adverse to you . . . ." (D.I. 500, Ex. B at 2) Not unlike the waiver language at issue in *Galderma*, the prospective waiver executed by Atlas explains that agreeing to the waiver risks Gibson Dunn advocating for another client directly adverse to Atlas. *Galderma*, 927 F. Supp. 2d at 400. Thus, the waiver language supports a finding of informed consent.

**14.** The prospective waiver language at issue also identifies reasonably available alternatives to the proposed course of conduct. The engagement letter provides, "[i]f for any reason, your consent and waiver of potential conflicts is not effective in the circumstances, you consent to our resignation from our representation of you, and agree to support a motion, if filed by the Firm, to withdraw from our representation of you if resignation at that time is otherwise

6

permissible under applicable professional rules." (D.I. 500, Ex. B at 3) Incorporated by reference into the engagement letter are Terms of Retention, which include a provision granting Atlas "the right to terminate [Gibson Dunn's] services at any time." (*Id.* at § 6.1) This language informs Atlas that it may terminate Gibson Dunn's representation as an alternative course of conduct, further supporting a finding of informed consent. *See Galderma*, 927 F. Supp. 2d at 400.

**15.** Although a more comprehensive explanation of the types of future representations that might arise, and the actual and reasonably foreseeable adverse consequences of those representations, offers stronger support of informed consent, such language is not always necessary to establish informed consent in view of the 2002 amendments to the Model Rules. *See Galderma*, 927 F. Supp. 2d at 401 (distinguishing *Celgene*, 2008 WL 2937415, at *8).

**16.** The Model Rules further provide that sophisticated users of legal services are held to a higher standard when giving consent regarding future conflicts unrelated to the subject of the representation. Model Rule 1.7, cmt. 22. The record before the court establishes that Atlas is experienced in hiring large national law firms. (7/30/18 Tr. at 11:15-21) "Normally, such persons need less information and explanation than others." *Galderma*, 927 F. Supp. 2d at 402. This factor further supports the court's conclusion that Atlas gave informed consent in signing the prospective waiver of conflicts.

**17.** Finally, the record before the court establishes that Mr. Celio's continued representation of defendants in the instant securities litigation is unrelated to Gibson Dunn's representation of Atlas in various transactional and other advisory matters. (D.I. 493 at ¶ 2) As a result, "the risks present in most concurrent representation—that is, a risk of divided loyalty to each client or an imposition on the independent judgment on [Gibson Dunn's] part, are not great

7

in this case." *Elonex*, 142 F. Supp. 2d at 583. Moreover, to ensure that both Mr. Celio and Gibson Dunn can continue "to provide competent and diligent representation to each affected client" in accordance with Model Rule 1.7(b)(1), Gibson Dunn represents that it will implement a strict ethical screen and the use of conflicts counsel to examine Atlas witnesses at deposition or trial. (D.I. 493 at ¶¶ 6, 8) The record reflects that Gibson Dunn has already taken precautionary measures to wall off Mr. Celio from any exposure to unrelated Atlas matters. Specifically, in an unrelated securities matter involving Atlas, Gibson Dunn took the precaution of switching counsel from the Palo Alto office to an attorney in Gibson Dunn's Washington, D.C. office. (D.I. 499 at ¶ 7; 7/30/18 Tr. at 30:4-13) The duration of Mr. Celio's representation of defendants in this and other matters supports defendants' interest in retaining their counsel of choice, and defendants would be prejudiced by retaining new counsel at this late stage of the instant complex securities litigation. Under the foregoing circumstances, disqualification of Mr. Celio is not warranted in this case. *See Elonex*, 142 F. Supp. 2d at 583 (observing that "disqualification is a severe sanction").

**18. Conclusion.** For the foregoing reasons, the emergency motion to maintain defendants' choice of counsel is GRANTED.

**19.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties should jointly submit a proposed redacted version by no later than **August 17, 2018**. The court will subsequently issue a publicly available version of its Memorandum Order.

8

**20.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ.

P. 72(a), and D. Del. LR 72.1(a)(2).  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R.

Civ. P. 72(a).  The objections and responses to the objections are limited to ten (10) pages each.

**21.** The parties are directed to the court's Standing Order For Objections Filed Under

Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge