IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE FISKER AUTOMOTIVE HOLDINGS, ) Civ. No. 13-2100-CFC-SRF
INC. SHAREHOLDER LITIGATION ) ~~UNDER SEAL~~ unsealed 12/11/18

MEMORANDUM ORDER

At Wilmington this 19th day of November, 2018, the court having considered the letter briefs and arguments presented by the parties regarding the motion to compel Defendant, Bernhard Koehler, to produce documents claimed to be privileged, filed by Plaintiffs Atlas Allocation Fund, L.P. ("Atlas Fund") and Atlas Capital Management, L.P. ("Atlas Management"), CK Investments LLC, David W. Raisbeck, Hunse Investments, L.P., Southwell Partners, L.P., Sandor Master Capital Fund, John S. Lemak, Pinnacle Family Office Investments, L.P., Dane Andreeff, SAML Partners, Kenneth & Kimberly Roebbelen Revocable Trust of 2001, Brian Smith, PEAK6 Opportunities Fund L.L.C., 8888 Investments GmbH, MCP Fisker L.L.C., 12BF Global Investments, Ltd., and ASC Fisker L.L.C. (collectively, "Plaintiffs") (D.I. 294; D.I. 310), IT IS HEREBY ORDERED that Plaintiffs' motion is GRANTED, subject to the conditions set forth herein and for the reasons set forth below:

1. **Background.** Plaintiff Atlas Management filed suit on December 27, 2013 against Henrik Fisker, Bernhard Koehler, Joe DaMour, Peter McDonnell, Kleiner Perkins Caufield & Byers LLC, Ray Lane, Keith Daubenspeck, Richard Li Tzar Kai, and Ace Strength, Ltd. (collectively, "Defendants").[1] (D.I. 1; D.I. 16) On July 23, 2014, Plaintiffs filed a Consolidated

---

[1] The initial Complaint was filed by Atlas Management. (D.I. 1) Peter McDonnell was added as a defendant in the Amended Complaint. (D.I. 16) The Consolidated Amended Complaint and the Second Consolidated Amended Complaint were filed by all of the Plaintiffs listed *supra*. (D.I. 24; D.I. 145)

Amended Complaint. (D.I. 24) Defendants moved to dismiss the Consolidated Amended Complaint. (D.I. 29; D.I. 31; D.I. 33; D.I. 36; D.I. 38; D.I. 43) On September 9, 2015, the court granted-in-part and denied-in-part Defendants' motion to dismiss the Consolidated Amended Complaint.[2] (D.I. 69) On May 16, 2016, Plaintiffs filed a Second Consolidated Amended Complaint. (D.I. 145) On June 15, 2016, Defendants moved to dismiss the Second Consolidated Amended Complaint. (D.I. 158) On December 21, 2016, the case was referred to the undersigned magistrate judge for all disputes related to fact discovery. (D.I. 253) On February 7, 2017, the court denied Defendants' motions to dismiss the Second Consolidated Amended Complaint. (D.I. 283) On May 12, 2017, Plaintiffs filed a motion for leave to file a Third Consolidated Amended Complaint. (D.I. 353) The motion was granted-in-part and denied-in-part by District Judge Colm Connolly on October 12, 2018.[3] (D.I. 553) Plaintiffs allege violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") and common-law fraud in connection with the sale of Fisker Automotive ("Fisker") securities. (D.I. 145 at ¶ 1)

2. Atlas Fund and Atlas Management are both based in Texas. (*Id.* at ¶ 15) Defendant Bernhard Koehler ("Koehler") was Fisker's Chief Operating Officer prior to its bankruptcy. (*Id.* at ¶ 28) Since that time, Koehler has been an employee of Karma Automotive, LLC ("Karma"), holding the titles of Co-Founder and Managing Director of Europe and Asia. (D.I. 316-2 at ¶ 4) Joe DaMour ("DaMour") was Fisker's Chief Financial Officer until July 2012. (D.I. 145 at ¶ 29)

---

[2] The Memorandum was modified on October 15, 2015. (D.I. 81) Defendant Peter McDonnell's motion to dismiss was granted. (*Id.*)

[3] The case was originally assigned to District Judge Sue L. Robinson. Following Judge Robinson's retirement, the case was reassigned to Third Circuit Court of Appeals Chief Judge D. Brooks Smith by Order of Designation. (D.I. 359) The case has recently been reassigned to District Judge Connolly. *In re Fisker Automotive Holdings Inc. Shareholder Litigation*, C.A. No. 13-2100-CFC-SRF, Order dated August 27, 2018 (D. Del. Aug. 27, 2018).

Kleiner Perkins Caufield & Byers LLC ("Kleiner Perkins") is a venture capital firm headquartered in Menlo Park, California, and was a controlling shareholder in Fisker. (*Id.* at ¶ 30) Non-party Fisker is a Delaware Corporation which had its principal place of business in Anaheim, California. (*Id.* at ¶ 26)

3. **Relevant Procedural History.** On November 22, 2013, Fisker filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. (*Id.* at ¶ 26) On February 19, 2014, the Bankruptcy Court approved an Asset Purchase Agreement ("APA"). (D.I. 117, Ex. A) Pursuant to the APA, Karma purchased Fisker's "Acquired Assets," including "copies of all Business Records" of Fisker, including the documents at issue in the present dispute. (*Id.*) On July 28, 2014, the Bankruptcy Court approved the Liquidating Trust Agreement (the "Trust Agreement") between the Debtors (Fisker) and the Liquidating Trustee, Emerald Capital Advisors Corp. (the "Trustee"). (*Id.*) The Trustee received "all books, records, and files of the Debtors and of the Estates" other than the "Acquired Assets." (*Id.*) After the initiation of this lawsuit, on February 17, 2016, Plaintiffs, the Trustee, and Karma entered into a stipulation for the purpose of facilitating Karma's and the Trustee's respective responses to Plaintiffs' subpoenas in this action ("the Stipulation").[4] (*Id.*) According to the Trust Agreement and the Stipulation, the parties who have the right to assert or waive the attorney-client privilege are Karma, the purchaser of Fisker's "Acquired Assets," and the Trustee, as the successor-in-interest to Fisker. (*Id.*) The Stipulation states:

> WHEREAS, pursuant to the Liquidating Trust Agreement, "all privileges with respect to any assets of the Estates and/or of the Debtors (other than the Acquired Assets),[5] including the attorney-client privilege, shall be automatically vested in,

---

[4] The Stipulation was entered as an Order of the court on March 2, 2016. *In re Fisker Automotive Holdings Inc. Shareholder Litigation*, C.A. No. 13-2100-CFC-SRF, Order dated March 2, 2016 (D. Del. Mar. 2, 2016).

[5] Karma was the purchaser of the Acquired Assets. (D.I. 117, Ex. A)

3

and available for assertion by or waiver on behalf of, the Liquidating Trust to the extent provided by the Plan."

(*Id.*) The Stipulation also provides that the "production or disclosure of any document that is subject to attorney-client privilege, attorney work-product protection, or any similar privilege or protection . . . pursuant to this Stipulation shall not be deemed a waiver of such privilege or protection in this or any subsequent state or federal proceeding, pursuant to Federal Rule of Evidence 502." (*Id.* at ¶ 3)

4. After receiving Plaintiffs' First Request for Production of Documents ("RFP"), Koehler, through his attorneys, sought access from Karma to his emails from his time as an employee at Fisker. (D.I. 316-2 at ¶ 4) The emails were part of the "Acquired Assets" Karma purchased during the Fisker bankruptcy proceeding. (D.I. 316 at 5) Koehler's counsel received the emails from Karma, with the understanding that Koehler would not waive attorney-client privilege with respect to the documents. (*Id.* at 5-6)

5. On December 7, 2015, Koehler served his Responses and Objections to Plaintiffs' RFPs. (D.I. 316, Ex. A) Koehler redacted or withheld approximately 1,800 documents that he obtained from Karma based on the attorney-client privilege. (D.I. 311 at 1) Of these 1,800 documents, Koehler withheld or redacted roughly 1,200 documents but did not create a privilege log with respect to these documents. (*Id.* at 2) For the remaining 609 documents, Koehler created a privilege log. (D.I. 294, Ex. 1) Generally, these documents are part of a larger group of emails and related attachments that are stored on Fisker's MS Exchange server, which is now maintained by Karma. (D.I. 311 at 2)

6. On February 23, 2017, Plaintiffs filed the pending motion to compel Koehler to produce, in unredacted form, the approximately 1,800 Fisker pre-bankruptcy documents that he redacted or withheld based on the assertion of the attorney-client privilege. (D.I. 294) Koehler

4

opposes the motion. (D.I. 296; D.I. 316) On February 24, 2017, DaMour also filed a letter in opposition to Plaintiffs' motion.[6] (D.I. 298) On March 2, 2017, the court held a discovery dispute teleconference concerning Plaintiffs' motion to compel documents. *In re Fisker Automotive Holdings Inc. Shareholder Litigation*, C.A. No. 13-2100-CFC-SRF, Oral Order dated February 17, 2017 (D. Del. Feb. 17, 2017). The court requested supplemental briefing on the privilege issue. On March 27, 2017, briefing was complete. (D.I. 320)

7. **Legal Standard.** The court or parties in a litigation can agree to a stipulation or agreement regarding whether production of certain documents during discovery does or does not waive privilege or protection. Fed. R. Evid. 502. Pursuant to Rule 502(d):

> Controlling Effect of a Court Order. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any federal or state proceeding.

Fed. R. Evid. 502(d). Furthermore, Rule 502(e) states:

> Controlling Effect of a Party Agreement. An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.

Fed. R. Evid. 502(e).

8. The attorney-client privilege protects disclosure of communications between a client and his or her attorney related to securing legal advice. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861-65 (3d Cir. 1994). The privilege applies to communications from an attorney to a client as well as from a client to the attorney. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 390 (1981). The burden of demonstrating the applicability of the attorney-client privilege

---

[6] Plaintiffs currently do not seek any documents from DaMour. (*See* D.I. 311 at 1 n.1)

5

rests on the party asserting the privilege. *See Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120 (3d Cir. 1986).

9. **Analysis.** At issue is an aggregate collection represented to consist of approximately 1,800 documents. (D.I. 311 at 2) Koehler prepared and produced a privilege log for 609 of these documents. (D.I. 294, Ex. 1) The remaining 1,200 documents in dispute were produced by Koehler to Plaintiffs in redacted form, but were not identified on any privilege log.[7] (D.I. 311 at 2) A further subset of the 1,800 total documents in issue consists of documents that are alleged to have been shared with Kleiner Perkins. (*Id.*) No information has been provided to the court as to the total number of documents provided to Kleiner Perkins and whether such documents are among the 609 listed on the privilege log, are among the 1,200 unlogged redacted documents, or overlap both categories.

10. The only facts on which the parties appear to agree is that the Trustee is the successor-in-interest to the Debtor, Fisker. Therefore, the Trustee and Karma are the only entities with authority to assert the privilege as to the Fisker pre-bankruptcy documents. (D.I. 311 at 6-7; D.I. 316 at 8-9) According to the Stipulation, the parties who have the right to assert or waive the attorney-client privilege are Karma, the purchaser of Fisker's "Acquired Assets," and the Trustee, as the successor-in-interest to Fisker. (D.I. 117, Ex. A) Resolution of this dispute would be much simpler if the Trustee and Karma would unambiguously articulate their positions as to whether they are asserting the privilege and, if so, as to which of the 1,800 documents in dispute. The communications with the Trustee and Karma attached as exhibits to

---

[7] Plaintiffs argue that the failure of Defendant Koehler to create a privilege log addressing the redactions should warrant their complete production to Plaintiffs without redaction. (D.I. 311 at 2, 8-9) Plaintiffs fail to provide an explanation and authority for their argument that an individual who lacks authority to assert a privilege nonetheless waives it in the absence of a production of a privilege log.

6

the briefing of this dispute indicate that the Trustee and Karma are straddling the fence on whether they object to the disclosure of the documents to Plaintiffs, and all other parties, for use in the instant litigation. For example, on March 10, 2017, Karma's counsel stated that, "Karma does not object to [Plaintiffs] receiving privileged documents under the stipulation." (D.I. 311, Ex. A) However, on March 17, 2017, Karma's counsel stated that it was "not issuing a direction to Koehler one way or the other" regarding the production of documents. (D.I. 316, Ex. D) On January 31, 2017, Trustee's counsel confirmed with Plaintiffs' counsel that the production of documents would be governed by the Stipulation, and, therefore, no documents should be withheld on the basis of privilege. (D.I. 294, Ex. 5) However, Koehler's counsel states the Trustee does not want to waive privilege over Fisker's pre-bankruptcy documents. (D.I. 316-2 at ¶ 5)

11. Given the equivocal posture of the Trustee and Karma, the parties to this dispute have argued their contrasting interpretations of the Stipulation executed by the Plaintiffs, the Trustee, and Karma concerning the Fisker documents. Specifically, the parties disagree over whether Koehler can be compelled to produce documents in his possession that he received from Karma. (D.I. 311; D.I. 316) Plaintiffs argue that Koehler cannot assert attorney-client privilege over the documents, because that right belongs to the Trustee and/or Karma. (D.I. 320 at 1) Plaintiffs assert that the Stipulation is not limited to inadvertent production, and the production of any privileged documents will not waive privilege, as outlined in the Stipulation. (*Id.* at 2) Additionally, Plaintiffs assert that privilege has been waived for any document shared with employees of Kleiner Perkins. (D.I. 311 at 10-12) Whereas, Koehler argues that only the Trustee and Karma can waive attorney-client privilege, and neither party has directed Koehler to produce any documents. (D.I. 296 at 1) Koehler further asserts that the Stipulation only

addresses inadvertent disclosure of privileged material, and, therefore, any production would waive privilege. (D.I. 316 at 7-8)

12. The court is not persuaded by Plaintiffs' argument that the Trustee and Karma have "no objection" to production of the documents in issue subject to the Stipulation which states the privilege is not waived. The Stipulation purports to be in accordance with Federal Rule of Evidence 502(d) & (e). The Stipulation provides that the "production or disclosure of any document that is subject to attorney-client privilege, attorney work-product protection, or any similar privilege or protection . . . pursuant to this Stipulation shall not be deemed a waiver of such privilege or protection in this or any subsequent state or federal proceeding, pursuant to [Rule] 502." (D.I. 117, Ex. A at ¶ 3) The Stipulation also states that its intent is the parties' "desire to facilitate the Liquidating Trustee's and Karma's responses to the Plaintiffs' subpoenas while preserving any privilege or protection vested in the Liquidating Trustee pursuant to the Plan or Trust Agreement or of Karma . . . ." (*Id.* at 2) The Stipulation, therefore, was intended by the parties as an efficient and cost effective way for the Trustee and Karma to produce documents without first conducting a burdensome and time-consuming privilege review. This appears consistent with Rule 502(d). As explained in the "Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence," Rule 502(d):

> [I]s designed to enable a court to enter an order, whether on motion of one or more parties or on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery.

Fed. R. Evid. 502, Statement of Congressional Intent. Therefore, a production of purportedly privileged documents pursuant to the Stipulation is not intended to constitute a waiver of the Trustee's or Karma's privileges. The point of the Stipulation, consistent with the point of Rule

502, is to allow the Trustee and Karma to respond to Plaintiffs' subpoenas for the Fisker documents without the need to invest significant time, trouble, and expense, *i.e.*, "exhaustive pre-production privilege reviews, *while still preserving [the Trustee's and Karma's] right to assert the privilege to preclude use in litigation of information disclosed in such discovery.*" Fed. R. Evid. 502, Statement of Congressional Intent (emphasis added).

13. Simply stated, the Stipulation facilitated the Trustee's and Karma's production of documents responsive to Plaintiffs' subpoenas, without putting them through the trouble and expense of culling for privileged documents and creating a privilege log at the time of production. Plaintiffs received the production more efficiently and expeditiously, and, in exchange, the producing parties attempted to assure themselves that they were not going to be held to have deliberately waived the privilege.

14. Plaintiffs' argument skirts the waiver issue. Plaintiffs contend Koehler lacks authority to assert a privilege claim. Yet, the relief Plaintiffs seek is a complete unredacted production, which is the equivalent of a blanket waiver as to the documents in issue.

15. The most cogent argument is the one advanced by Defendant DaMour, a party against whom Plaintiffs are not seeking an Order compelling production of documents.[8] Defendant DaMour argues that the Trustee knowingly produced privileged documents to the Plaintiffs. In support of his deliberate disclosure argument, DaMour relies upon the general rule articulated in *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991) – that "voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege." *Westinghouse*, 951 F.2d at 1424. *See also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 189-91 (D. Del. 2004); *Net2Phone,*

---

[8] *See* D.I. 311 at 1 n.1; D.I. 298; D.I. 316 at 11-12.

9

*Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *8-10 (D.N.J. June 26, 2008). DaMour further contends that, in addition to production to the Plaintiffs, a production was made to the SEC in its investigation. Moreover, Defendants DaMour and Koehler have asserted the "advice of counsel" defense, which creates an additional basis to deem the privilege waived. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995).

16. Plaintiffs have elected not to confront DaMour's argument by not moving to compel discovery from him. Moreover, the Plaintiffs have expressly asked the court not to address whether the privilege has been waived in deciding their motion. (D.I. 311 at 8; D.I. 320 at 6) Koehler includes DaMour's arguments in his brief but falls short of advocating them.

17. **Conclusion.** For the foregoing reasons, Plaintiffs' motion to compel is GRANTED, subject to the following conditions. The undersigned judicial officer finds that the only practical way to resolve the issue is to require the privilege holders, the Trustee and Karma, to expressly state in writing whether a privilege is asserted as to some or all of the 1,800 documents in dispute and to provide a privilege log for the documents, if any, for which a privilege is asserted. Therefore, Plaintiffs shall provide copies of this Memorandum Order to the Trustee and Karma on or before **November 21, 2018** and provide a written certification of compliance to the court. The Trustee and Karma shall have 30 days from the date of service of the Memorandum Order to advise the court and all counsel of record, in writing, of their position on the assertion of privilege as to the approximately 1,800 documents in dispute along with production of a privilege log as to any document for which a privilege is asserted. If the Trustee and Karma fail to respond in accordance with this Memorandum Order, then the court hereby orders a complete and unredacted production by Defendant Koehler, at the expiration of the time period set by the court in this Order.

18. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties should jointly submit a proposed redacted version by no later than **November 30, 2018**, along with a motion explaining why disclosure would be harmful pursuant to *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994). The court will subsequently issue a publicly available version of its Memorandum Order.

19. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

20. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE